No. 13-7139 September Term, 2013

1:12cv-01460-RCL

IN THE UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

JAMES A. FROST,

    Appellant

vs.

THE CATHOLIC UNIVERSITY OF AMERICA, et. al.,

    Appellees

APPEAL

From

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# APPELLANT'S BRIEF

Filed By:

James A. Frost

*Pro Se* Appellant

P.O. Box 389

Falling waters, WV 25419

Ph.: 304-671-0577

# TABLE OF CONTENTS

P.2  Table of Authorities

P.3  Jurisdictional Statement

P.4  Statement of Issues Presented for Review

P.5  Statement of the Case

P.6-7 Statement of Relevant Facts

P.8  Summary of Argument

P.9-13 Argument

P.14 Conclusion

P.15 Compliance with Rule 32 (a) (7)

P.16 Glossary

P.17 Addendum

# TABLE OF AUTHORITIES

P.11 Beck v. Ohio, 379 U.S. 89, 855 S.Ct. 223 (1964)

P.13 Findlay v. CitiMortgage, Inc., 813 F. Supp.2d 108 (2011)

P.10 McGloin v. U.S., 232 A.2d 90 (App. 167)

P.9 Dictionary of Modern Legal Usage (Oxford University Press, New York, 1995)

P.17 District of Columbia Code Section 22-3302

P.3 United States Code, Title 28, Section 1243

P.3 United States Code, Title 42, Section 1983

## JURISDICTIONAL STATEMENT

(A) (1) The basis for the U.S. District Court's jurisdiction was 42 U.S.C. 1983.

    (2) The basis for this U.S. Court of Appeals' jurisdiction is 28 U.S.C. 1343.

(B) The date of filing of this civil action was September 4, 2012.

(C) (1) The date of the Order of the court below dismissing this civil action was August 15, 2013.

(C) (2) The date of filing of the *pro se* appellant's notice of appeal was September 5, 2013.

(D) The appellant asserts that this appeal is from a final order of court which disposed of all claims which were before the trial court.

# ISSUES PRESENTED FOR REVIEW

I. Whether any Rule 12 (b) (1) motion to dismiss for lack of subject matter jurisdiction filed in the court below by the appellees is an issue before this appellate court.

II. Whether on September 7, 2011, agents of The Catholic University of America employed by the university's "public safety department" [campus police] who were acting on behalf of the university with both ostensible and actual authority had probable cause to arrest the appellant and forcibly detain him for more than a half hour.

III. Whether the appellant's amended complaint contains well-pleaded factual allegations that, acting on behalf of The Catholic University of America, the president of the university, the chancellor of the university and his chief assistant, and the director of the university's campus police force either ordered or caused the deprivation on September 7, 2011, of the appellant's right under the Fourth Amendment to the United States Constitution and Title 42, United States Code, Section 1983, not to be subjected to an unreasonable seizure of his person by individuals acting under color of state or District of Columbia law.

## STATEMENT OF THE CASE

On September 4, 2012, the *pro se* appellant filed in the U.S. District Court for the District of Columbia a civil action in tort against nine parties defendant. He has since voluntarily dismissed from his lawsuit with prejudice against re-filing three of the original defendants.

On October 26, 2012, the *pro se* appellant filed an amended complaint against the six remaining defendants.

On November 20, 2012, and on January 2, 2013, motions to dismiss the amended complaint were filed by the attorney for the defendants.

On April 15, 2013, a committee of U.S. District Court judges re-assigned this case from Judge Richard W. Roberts to Chief Judge Royce C. Lamberth.

On June 14, 2013, the *pro se* appellant filed a pleading captioned "Request for Hearing In Open Court" for the purpose of oral argument before the trial court judge on all pending motions. Somehow, however, the docket entries on Pacer.gov showed and still show the filing by the *pro se* appellant of a "motion" and not a "request."

On August 15, 2013, Senior Judge Lamberth (1) denied the appellant's "motion"; (2) granted all of the defendants' motions to dismiss; and (3) issued a memorandum opinion with his findings of fact and conclusions of law.

On September 5, 2013, the *pro se* appellant filed a notice of appeal to the U.S. Court of Appeals for the District of Columbia Circuit.

STATEMENT OF RELEVANT FACTS

The Catholic University of America which is located in the Brookland neighborhood of Northeast Washington, DC, is the only pontifical (created and chartered by the Vatican) institution of higher learning in the U.S.A.

In June 1962 the appellant graduated from a Sisters of Saint Benedict high school six blocks from The Catholic University of America's chemistry building on Michigan Avenue.

The appellant was a freshman student at The Catholic University of America during the academic year 1962-1963.

The Catholic University of America has twelve post-graduate schools.  One is the Columbus School of Law.

In December 1966 the Columbus School of Law admissions committee awarded the appellant a tuition, room and board scholarship.  (Without the scholarship it's highly unlikely that the appellant would have become a licensed attorney.)

From May 1971 when the Columbus School of Law awarded him his J.D. degree until the summer of 1988 the appellant went back to his *alma mater* only two or three times.  After his retirement in August 2007 from the federal civil service, the appellant's visits to The Catholic University of America were more frequent.

Adjacent to The Catholic University of America's campus is the Basilica of the Shrine of the Immaculate Conception, which is the largest Roman Catholic church east of the Mississippi River.  The basilica isn't part of the university.

On his visits to Brookland from August 2007 until September 2011 the appellant would almost always attend Mass at the basilica and then walk across the university campus to the Columbus School of Law.

One job the appellant held as practicing attorney was akin to being a public prosecutor.  That position was as an assistant bar counsel, a prosecutor of other lawyers, we might say.

In the period of time August 2007 to September 2011 the appellant formed the firm belief that the top-level administrators at The Catholic University of America were definitely not admirable individuals of the highest integrity as their predecessors in decades past had been.

There are well-pleaded allegations in the appellant's amended complaint that appellees Garvey, Wuerl and Knestout, and many of the university's trustees have been active participants for decades in (or collaborating with) a conspiracy to deceive high net worth Catholics in the U.S.A. into continue contributing goodly amounts of money to The Catholic University of America treasury by keeping them in the dark about the inconvenient truth that the university

hasn't for quite a while been an "orthodox" Roman Catholic educational institution loyal to Holy Mother Church and to the Magisterium (teaching authority) of the Church.

There are well-pleaded allegations in the appellant's amended complaint that a second conspiracy was formed three years ago this month after undergraduate students at The Catholic University of America who were renting a house near the campus on Irving Street Northeast admitted into their residence late in the evening of February 13, 2011, three young African-American men who were business partners of theirs. The business they were all in was illegal drug dealing. That night the Caucasian so-called Catholic Christian university students were in illegal possession of handguns. So were the young black men, two of whom, Akeem Cayo and Devon Sealy, wound up dead.

During the afternoon hours of February 14, 2011, as young Mr. Sealy was dying at Howard University Hospital from the sequelae of gunshot wounds, officers in The Catholic University of America's public safety department showed up at the Irving Street house where there had been gunfire the night before to help The Catholic University of America students on the lease (some scholarship athletes) move out and take all of their possessions with them. The Catholic University of America campus police officers brought university-owned vans to the house on Irving Street and drove those fine "Catholic" boys and their things to another location.

In headlines on news articles both The Washington Post newspaper and the student newspaper at The Catholic University of America called the event in Brookland on February 13/14, 2011 a "home invasion." It wasn't.

In early 2012 the appellant was living in Southwest DC in the Metropolitan Police Department's seventh district. One day M.P.D. patrol officers on duty and out "on the street" let the appellant know that what really "went down" in Brookland the night of February 13/14, 2011. It was a drug deal gone bad.

The reason that the appellees in this case and their allies didn't and don't want the appellant anywhere around The Catholic University of America is that he's someone who knows they're all phonies and, as far as those people are concerned, the appellant is a man who "knows too much" about what they've been up to.

A well-pleaded allegation in his amended complaint refers to the appellant as a "truth-telling whistleblower." He is.

## SUMMARY OF APPELLANT'S ARGUMENT

The *pro se* appellant's amended complaint sufficiently pleads the causes of action set forth therein to withstand a Rule 12 (b) (6) motion to dismiss.

# ARGUMENT

Re the proper standard for judicial review of Rule 12 (b) (6) motions to dismiss:

The decision by the Court in this case will turn on how a panel of United States appellate judges rule on the question whether the appellant's amended complaint fails, as is contended by the appellees' counsel, "to state a claim upon which relief may be granted." In other words, is the appellant or is he not on review of the amended complaint entitled in law to have a trial on the merits of the causes of action in tort for which he is seeking a judgment against The Catholic University of America and against the individual appellees for compensatory and punitive damages?

A motion to dismiss under Federal Rule of Civil Procedure 12 (b) (6) for failure to state a claim for which relief may be granted serves the same function as did a "demurrer" under earlier rules of civil procedure. A demurrer was "a pleading that stated that even if the other party's allegations were proved, the other party would not be entitled to succeed, and therefore that the demurring party was entitled in law to succeed on the facts alleged and admitted by the other." See A Dictionary of Modern Legal Usage at 265 (Oxford University Press, New York, 1995).

## ISSUE #1

WHETHER THERE IS PENDING BEFORE THIS APPELLATE COURT AN APPELLEE'S RULE 12 (B) (1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.

The appellant having withdrawn from contention between the parties and thus from consideration by the Court some of the causes of action which were in his amended complaint when filed, the question remains whether the amended complaint contains well-pleaded factual allegations showing that, assuming all such allegations are true, the appellant has stated claims upon which relief may be granted so he's entitled to a trial on the merits in open court.

Federal courts always have subject matter jurisdiction to hear and decide a plaintiff's claim that a defendant acted tortiously toward her/ him in violation a right the plaintiff has under the fourth amendment to the constitution and concomitantly in violation of the plaintiff's common law rights. On that basis and for that reason the appellant avers that at this point in time in this civil action a Rule 12 (b) (6) motion is pending a decision by the Court but a Rule 12 (b) (1) motion is not.

ISSUE #2

WHETHER ON SEPTEMBER 7, 2011, APPELLEE VERNON H. ENNELS, SR., A SPECIAL OFFICER OF POLICE BY APPOINTMENT OF THE MAYOR OF THE DISTRICT OF COLUMBIA EMPLOYED BY THE CATHOLIC UNIVERSITY OF AMERICA'S "PUBLIC SAFETY DEPARTMENT (CAMPUS POLICE FORCE) HAD PROBABLE CAUSE TO ARREST THE APPELLANT FOR TRESPASSING ON UNIVERSITY PROPERTY AND ALONG WITH OTHER UNIVERITY POLICE OFFICERS TO DETAIN THE APPELLANT AGAINST HIS WILL FOR 33 MINUTES.

It's not in dispute between the parties that prior to 6 p.m. on September 7, 2011, no one at The Catholic University of America with the authority to so state notified the appellant that he had been "barred"/banned from university property to include the building and grounds of the Columbus School of Law. There is no copy of such a notice to the appellant in the record.

On page 9 of his memorandum opinion the trial judge stated that it was "reasonable" for appellee Ennels to "conclude" from a university document captioned "campus information alert" that at 6 p.m. on September 7, 2011, inside the law library of the Columbus School of Law the appellant was trespassing on university property. However, there's nothing in the record like an affidavit by appellee Ennels to show that prior to 6 p.m. on September 7, 2011, Mr. Ennels had read that so-called campus information alert. In fact, in the record there isn't an affidavit by any university employee working for the campus police force that before 6 p.m. on September 7, 2011, she/he read what the 'campus information alert' said and that includes appellee Johnson, the director (or campus police chief).

On September 7, 2011, the appellant didn't commit the District of Columbia crime of illegal entry either by walking from the adjacent property of the Basilica of the Shrine of the Immaculate Conception onto property of The Catholic University of America or by entering the Columbus School of Law because in each instance he had a good purpose to do as he did and a *bona fide* belief in his right to enter the grounds of the university and then enter the law school building. See McGloin v. U.S., 232 A.2d 90 (App. 1967).

As of September 7, 2011, Section 22-3302 of the District of Columbia Code provided that if someone with authority to do so for the owner of private property told someone on/in the property to leave and that individual did leave right away, no crime was committed. Only when the person ordered to get out "refuse[d] to quit" was a crime committed.

N.B. That District of Columbia criminal law statute is the Addendum to this brief.

To agree with the trial judge's holding that on September 7, 2011, The Catholic University of America's campus police had probable cause to arrest the appellant for trespassing on university property one must: first, accept the proposition that appellee Ennels and other university campus police officers were justified in either being ignorant of the elements of the District of Columbia crime of trespassing on private property or were justified in ignoring and defying the law; and, second, disagree with the Metropolitan Police Department fifth district patrol officers who were dispatched to the scene at the request of The Catholic University of America and who after hearing the campus police ask that the appellant be charged with trespassing, listening to what the appellant had to tell them, and conferring via police radio with those above them in the M.P.D. chain of command, found that there was not probable cause for appellee Ennels and the other campus cops to have arrested and detained the appellant and there wasn't probable cause for the M.P.D. to charge the appellant with a District of Columbia crime.

In <u>Beck v. Ohio</u>, 379 U.S. 89, 85 S.Ct. 223 (1964), the United States Supreme Court held that probable cause may not be established simply by showing that the officer who made the challenged arrest or search subjectively believed he had grounds for his action. If subjective good faith alone were the test, the protection of the Fourth Amendment would evaporate and the people would be "secure in their persons, houses, papers, and effects only in the discretion of the police."

In this case, United States District Judge Royce C. Lamberth assumed that Appellee Ennels was familiar with the wording in the "Campus Information Alert" document before he arrested the Appellant on September 7, 2011, and the judge then speculated as to what was in Officer Ennels' mind when he made his decision, if he actually made one, that he had probable cause to make the arrest.

In the American legal system, however, as was held by the Supreme Court held in <u>Beck</u> concerning the police, a trial court judge when deciding the proper application of law to facts has no warrant to try to play mind-reader, which is what Judge Lamberth appears to have been doing in this case.

Issue #3

Whether the appellant's amended complaint contains well-pleaded allegations that, acting on behalf of The Catholic University of America, the president of the university, the chancellor of the university and his chief assistant, and the director of the university's campus police force either ordered or caused the deprivation on September 7, 2011, of the appellant's right under the Fourth Amendment to the United States Constitution and Title 42, United States Code, Section 1983, not to be subjected to an unreasonable seizure of his person by individuals acting under color of state or District of Columbia law.

In his memorandum opinion the trial court judge held that no other appellee is liable to the appellant for tortious conduct toward the appellant on September 7, 2011, by appellee Vernon H. Ennels, Sr., a special District of Columbia officer of police working for The Catholic University of America as a campus policeman. While not actually using the word, in his memorandum opinion, the trial court judge depicts appellee Ennels on September 7, 2011, as a "freelancer", i.e., a person acting on his own in his work without direction or guidance from anyone in the organization which employs him.

Well-pleaded factual allegations in the appellant's amended complaint show that's not case. See **Pr.** 130; 131; 175; 179; 197; 198; and 202.

On pages 9 and 10 of his memorandum opinion the trial court judge held that he had to grant the Rule 12 (b) (6) motions to dismiss filed on behalf of all appellees except appellee Ennels because the legal doctrine *respondeat superior* applies to the facts of this case.

Appellee Ennels tortious conduct toward the appellant on September 7, 2001, was intentional, not negligent.

Query:

When an employee of a business entity or a non-profit organization like a university commits an intentional tort at his workplace during his duty hours does the doctrine *respondeat superior* necessarily apply?

No. Not if the employee was doing what his employer wanted him to do.

On September 7, 2011, appellee Ennels was doing what his employer and his supervisors who were and are co-conspirators with him in a conspiracy wanted him to do. See **Pr.** 173 and 198.

On pages 8 of his memorandum opinion the trial court judge stated that the appellant didn't allege in his amended complaint facts showing that the administrators of The Catholic University of America ordered or caused him to be falsely arrested, battered, falsely imprisoned, and unconstitutionally detained by appellee Ennels.

The appellant did so allege. See **Pr.** 152; 171-172-173; 197; 198; 202; and 204.

In his memorandum opinion the trial court judge said nothing about well-pleaded allegations in the amended complaint re conspiracies.

In the District of Columbia a civil conspiracy is recognized as means to establish vicarious liability for underlying torts. Findlay v. CitiMortage, Inc. 813 F. Supp. 2d 108 (2011).

A longstanding conspiracy to deceive wealthy Catholics in the U.S.A. to keep giving money to The Catholic University of America ( the first conspiracy) a conspiracy all appellees either participate in or collaborate with is well-pleaded in the amended complaint. See **Pr.** 80-83.

A second conspiracy (a conspiracy of silence for a cover-up) that started three years ago this month is well-pleaded in the amended complaint. See **Pr.** 102-108 and 113.

Appellee Ennels is identified as a co-conspirator at **Pr.** 197.

The doctrine of *respondeat superior* doesn't apply to the facts of this case.

The best way to describe appellee Ennels' relationship as of September 7, 2011, to the university employing him and to the university's policy makers/ top decisionmakers appellees Garvey, Wuerl, and Knestout would be the relationship in 1960 of a "soldier" in the Gambino organized crime "family" who's given an assignment by the "capo" (boss) or by the underboss to act as "an enforcer" or as "a hit man".

## CONCLUSION OF APPELLANT'S ARGUMENT

The relief sought by the *pro se* appellant from this honorable Court is reversal of U.S. District Court judge Royce C. Lamberth's Order dated August 15, 2013 granting Rule 12 (b) (6) motions filed on behalf of appellees The Catholic University of America; John H. Garvey; Donald W. Wuerl; Barry C. Knestout; Thomasine N. Johnson; and Vernon H. Ennels, Sr.; and reversal of Judge Lamberth's dismissal of this civil action.

## COMPLIANCE WITH RULE 32 (a) (7)

The *pro se* appellant is not a computer guy. He created this brief in Microsoft Word on Fed-Ex-Office computers at the cost of thirty cents per minute. It was printed by a company here in West Virginia.

The *pro se* appellant is pretty sure that the chief clerk of court and the deputy clerks will find this brief to be shorter than almost all briefs they receive.

The *pro se* appellant believes that his brief complies with the Rule 32 (a) (7) limitations on the number of pages and the number of lines permitted in a brief filed in a U.S. Court of Appeals.

*James A. Frost*

James A. Frost

*Pro Se* Appellant

Falling Waters, West Virginia

# GLOSSARY

In this brief **Pr.** is used for the word paragraph.

# DISTRICT OF COLUMBIA
## *OFFICIAL CODE*
### 2001 EDITION

Containing the Laws, general and permanent in their nature, relating to or in force in the District of Columbia (Except such laws as are of application in the General and Permanent Laws of the United States) as of September 13, 2012.

VOLUME 12

Title 22

Criminal Offenses and Penalties
Chapters 33 to End

to

Title 24

Prisoners and Their Treatment

**CRIMINAL OFFENSES AND PENALTIES**

**§ 22–3302.   Unlawful entry on property.**

Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $100 or imprisonment in the Jail for not more than 6 months, or both, in the discretion of the court.

(Mar. 3, 1901, 31 Stat. 1324, ch. 854, § 824;  Mar. 4, 1935, 49 Stat. 37, ch. 23;  July 17, 1952, 66 Stat. 766, ch. 941, § 1.)

USCA Case #13-7139  Document #1479286  Filed: 02/07/2014  Page 20 of 20